## WISOTZKEY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8599.

Circuit Court of Appeals, Third Circuit.
Argued May 16, 1944.
Decided Aug. 10, 1944.

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers and Betty Cochran Stockvis, both of Washington, D. C., on the brief), for petitioner.

Louise Foster, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before DOBIE and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States, affirming the imposition of certain gift taxes by the Commissioner of Internal Revenue.

Petitioner, H. A. Wisotzkey, (hereinafter called Wisotzkey) made direct gifts, in the year 1938, of stock of the Maple Press Company (hereinafter called Maple) to each of his five children; each child receiving Maple stock of the value of $3,000. In his gift tax return for 1938, Wisotzkey excluded all of these gifts on the ground that each gift was less than $5,000 in value. He had made no other direct gifts to these persons in that year.

On December 30, 1938, Wisotzkey executed three groups of trust indentures, (herein designated as Group I, Group II, and Group III), by which he conveyed the entire title in certain property to himself and two sons as trustees, for the benefit of certain named beneficiaries.

The corpora of the Group I trusts consisted of Maple stock. The names of Wisotzkey's children, the beneficiaries, and the value of the corpus of each trust are:

| Beneficiaries | Value of Corpus | Exclusion Claimed |
| --- | --- | --- |
| Edna Margaret Gartman | $21,000 | $5,000 |
| Edith Campbell Hummel | 9,000 | 5,000 |
| John Utz Wisotzkey | 9,000 | 5,000 |
| Bradley Wisotzkey | 21,000 | 5,000 |
| Harry Albert Wisotzkey, Jr. | 3,000 | 3,000 |

The Group I indentures are substantially alike. We set out, ipsissimis verbis, certain pertinent excerpts found in all the indentures:

"ONE: The Trustees are to collect the income, revenues, profits and dividends arising from and accruing to the aforesaid stock, as well as the income from any and all other property that might hereafter be

received or acquired under the terms of this indenture, and to pay over and disburse the same annually to       the beneficiary, or his heirs or assigns.

"Two: The trustees are to hold the aforesaid shares of stock as Corpus, and are to treat any and all stock dividends as Corpus and not as income, and, subject to the provisions of paragraph Four (4), to hold as Corpus any and all other property that might hereafter be received or acquired as Corpus under the terms of this indenture until the 31st day of December 1962, and then to pay over the same to the said beneficiary, or his heirs or assigns; provided however that this trust shall terminate upon the tenth anniversary of the day on which the Trustee H. A. Wisotzkey ceases to be a Trustee, should that anniversary be earlier than December 31, 1962, in which event the trust estate shall forthwith be paid over to the beneficiary or his heirs or assigns."

The corpora of the Group II trusts were made up of Maple stock. Group II consisted of twelve separate indentures. Each instrument named one of Wisotzkey's grandchildren as beneficiary, and the value of each gift was $3,000.

The pertinent provisions found in all the Group II indentures are:

"One: The Trustees are to collect the income, revenues, profits and dividends arising from and accruing to the aforesaid stock, as well as the income from any and all other property that might hereafter be received or acquired under the terms of this indenture, and to pay over and disburse the same to or for       , the beneficiary, for the purpose of the education and training and maintenance of said beneficiary until said beneficiary reaches the age of twenty-one (21) years, and then to pay over such income, revenue, profits, and dividends to said beneficiary annually; but stock dividends of stock of The Maple Press Company shall be treated as Corpus and not as income.

"Two: The Trustees are to hold the aforesaid shares of stock as Corpus, and to hold any stock dividends paid on it as Corpus, and, subject to the provisions of paragraph Four (4), to hold as Corpus any and all other property that might hereafter be received and acquired as Corpus under the terms of this indenture, until the said beneficiary becomes forty-five (45) years of age, and shall then pay over the same

to the said beneficiary or his heirs or assigns. Should the beneficiary die before reaching the age of forty-five (45) years, this trust shall be administered, for the benefit of his heirs or assigns, exactly as it would have been administered for him had the beneficiary lived."

On the same day, Wisotzkey executed twelve additional trust instruments, herein referred to as Group III, of which Maple stock constituted the corpora. He named one of the same twelve grandchildren as beneficiary in each instrument. As in Group II, the value of the corpus of each trust was $3,000. The following excerpts from each indenture we consider the pertinent ones:

"One: The Trustees are to collect the income, revenues, profits and dividends arising from and accruing to the aforesaid stock, as well as the income from any and all other property that might hereafter be received or acquired under the terms of this indenture, and to accumulate the same for       , the beneficiary, and add it to the Corpus and preserve it intact until said beneficiary reaches twenty-one (21) years of age; thereafter to pay over and disburse to said beneficiary semi-annually all of the income, revenue, profit, and dividends of the trust estate as it is received, but stock dividends of stock of The Maple Press Company shall be treated as Corpus and not as income.

"Two: The Trustees are to hold the aforesaid shares of stock as Corpus, and to hold any stock dividends paid on it as Corpus, and, subject to the provisions of paragraph Four (4) to hold as Corpus any and all other property that might hereafter be received or acquired as Corpus under the terms of this indenture, and also hold as Corpus all of the accumulations of this estate up to the time the said beneficiary reaches 21 years of age, until the 31st day of December 1962, or until the said beneficiary becomes thirty-five (35) years of age, whichever is later; and upon the later of these two dates to pay over the same to the said beneficiary or his heirs or his assigns; provided, however, that if the tenth anniversary of the day on which the Trustee H. A. Wisotzkey ceases to be a Trustee shall occur before December 31, 1962 and before the said beneficiary becomes thirty-five (35) years of age then the Trustees shall pay over the entire Corpus of the estate to the said beneficiary upon his thirty-fifth birthday; or if the said

anniversary shall occur before December 31, 1962 and after the said beneficiary becomes thirty-five (35) years of age, then the Trustees shall pay over the entire Corpus forthwith.

"TEN: Should the beneficiary die before reaching the age of thirty-five (35) years, this trust shall be administered for the benefit of his heirs or assigns, exactly as it would have been administered for him had the beneficiary lived."

By the terms of the trust indentures, each trust was made irrevocable, and it was further provided that any trustee might resign upon thirty days written notice to the other trustees. In addition, each indenture contained a spendthrift clause.

Wisotzkey claimed an exclusion of $3,000 on each of the direct gifts to his children, and this the Commissioner allowed. He claimed a $5,000 exclusion as to the trust gifts in Group I, except as to the gift to Harry Wisotzkey, Jr. On this gift, he claimed an exclusion of the full $3,000. The Commissioner allowed an exclusion of $2,000 to each of the children, except to Harry Wisotzkey, Jr., and allowed an exclusion of $973.31 as to his gift.

Wisotzkey claimed an exclusion of $3,000 on each of the trusts for the grandchildren, but the Commissioner allowed no exclusion on those trusts where the income was to be accumulated until the beneficiary reached the age of 21 (Group III). The Commissioner, however, did allow certain exclusions on those trusts where the income was to be used currently for the support and maintenance of the beneficiaries.

The Commissioner disallowed an exclusion of $3,000 as to Harry Wisotzkey, Jr., on the ground that the trust was in reality a gift of two estates; namely, a present gift of a life interest, plus a future interest in the remainder.

The Commissioner refused to allow the full exclusion of $3,000 on the Group II trusts. He held the trusts to be gifts of two estates (1) a gift of the income, conceded to be a present gift and entitled to exclusion, and (2) a gift of the corpus, which he held to be a gift of a future interest.

Exclusion on all the Group III trusts for the grandchildren was disallowed. The Commissioner ruled that they were gifts of future interests, and as such came within the express terms of the statute.

Before the Tax Court Wisotzkey contended that all the gifts were of a present nature and that all the exclusions which he claimed should be allowed. The Tax Court sustained the findings of the Commissioner, and Wisotzkey has duly appealed.

The gift tax to which Wisotzkey objects was imposed under the Revenue Act of 1932, c. 209, 47 Stat. 169. The controlling section, 26 U.S.C.A. Int.Rev.Acts, page 585, § 504, reads as follows:

"SEC. 504. NET GIFTS

"(a) *General Definition.* The term 'net gifts' means the total amount of gifts made during the calendar year, less the deductions provided in section 505.

"(b) *Gifts Less than $5,000.* In the case of gifts (other than of future interest in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

Two allied questions merit discussion on this appeal: (1) Whether gifts in trust of corpus which is to be distributed to the beneficiary at a future date are gifts of future interests, as to which no exclusions are allowable; and (2) whether gifts in trust of an interest in income which is to be accumulated for a period, during which period the accumulating fund can be touched by no one and is to be then distributed until the corpus is paid, are gifts of a future interest.

The term "future interests" is defined by Article 11 of Treasury Regulations 79 (1936 ed.) as follows:

" 'Future interests' is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, *which are limited to commerce in use, possession, or enjoyment at some future date or time.* * * *" (Italics ours.)

The validity of this Regulation has been repeatedly sustained in judicial decisions. See United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; Commissioner v. Glos (Gloss), 123 F.2d 548; Commissioner v. Gardner, 7 Cir., 127 F.2d 929, 931; French v. Commissioner, 8 Cir., 138 F.2d 254.

Counsel for Wisotzkey strenuously urge that the gift here of a present income from

a trust, or one where the income is to be accumulated, with a provision that the beneficiary is to receive the corpus after a specified time, should be considered a present gift of the whole estate, and in support of such a merger calls our attention to the Rule in Shelley's Case.

■■ We are not here concerned with the distinctions and technicalities found in the ancient (and too often outworn) common-law rules governing estates in land. (By the great weight of authority, estates in personalty are not affected by the Rule in Shelley's Case.) Adherence to such technical common-law fictions would hamstring our taxing process and would frustrate the very purposes for which tax laws are enacted. As Mr. Justice Cardozo said in his dissent in Freuler v. Helvering, 291 U.S. 35, 49, 54 S.Ct. 308, 313, 78 L.Ed. 634: "The law of taxation is more concerned with the substance of economic opportunity than with classifying legal concepts, and tagging them with names and labels." Taxation is, and of necessity must be, eminently realistic and practical. United States v. Jacobs, 306 U.S. 363, 370, 59 S.Ct. 551, 83 L.Ed. 763.

We do not question the rule that once the equitable interest in a trust is lodged in the same person who holds the legal interest, a court of equity, upon proper application, will declare the trust at an end, if not inconsistent with the intention of the settlor. However, no such problem confronts us here. In the instant case, legal title is vested in the trustees. And, even if we assumed, arguendo, that the facts were otherwise, Wisotzkey's argument that the interests are merged would be without merit. All of the indentures in the three groups of trusts contained spendthrift clauses.

■ It is hornbook law that such a trust will not be terminated since it would patently be against the wishes of the settlor. However, for purposes of taxation, the intent of the settlor is not absolutely controlling. Fisher v. Commissioner, 9 Cir., 132 F.2d 383, 386.

■ The words of the indenture are important, in that whether the gift is of a present or future interest (a matter of law) is to be determined by the nature of the interest that the trust instrument gives to the beneficiary. Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909; United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; Commissioner v.

Gardner, 7 Cir., 127 F.2d 929; Commissioner v. Brandegee, 1 Cir., 123 F.2d 58.

■ Counsel stress the fact that here the donor, Wisotzkey, divested himself completely of all his interest in the trust property. Where, under prior decisions, the trustee was considered the beneficiary, this fact would have been important; however, since those cases were decided, the Supreme Court of the United States has held that the interest upon which the gift tax is based is not that which the donor parted with, but that which the donee receives. Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909.

■ Lawyers and laymen alike have long considered gifts of income, to be currently distributed, as a "present interest", and gifts of principal at a future date, as a "future interest", where the gifts were to different persons. *"No historical reason justifies abandoning the distinction in cases where the gifts of income and of principal are to the same person and are therefore regarded by donor and donee as one gift."* (Italics ours.) Charles v. Hassett, D.C., 43 F.Supp. 432, 435. Modern juristic thinking has effectively discarded the ancient log theory of title.

The Treasury Regulation is crisply clear in its definition of "future interests." These are interests which are limited to *commence in use, possession, or enjoyment at some future date or time.*

■ As Judge Lindley said in Commissioner v. Glos (Gloss), 7 Cir., 123 F.2d 548, 550:

"The sole statutory distinction between present and future interests lies in the question of whether there is *postponement of enjoyment of specific rights, powers or privileges which would be forthwith existent if the interest were present."* (Italics ours.)

In accord are Sensenbrenner v. Commissioner, 7 Cir., 134 F.2d 883; French v. Commissioner, 8 Cir., 138 F.2d 254; Fisher v. Commissioner, 9 Cir., 132 F.2d 383; Commissioner v. Wells, 6 Cir., 132 F.2d 405; Welch v. Paine, 1 Cir., 120 F.2d 141.

■ Wisotzkey asserts that the Commissioner has taken inconsistent positions in contending that a gift of present income is a present interest, (conceded by the Commissioner and so held by the Tax Court), while a gift of income to be accumulated until the beneficiary reaches the age of 21, is a future interest. Where, as here,

the accumulation of income is mandatory, and the Trustee has no authority to make disbursements, this contention is without merit, in view of the clear language of the Regulation. The beneficiary, though ultimately entitled to the income, by the express terms of the indenture has been deprived of present "rights, powers and privileges" in the accumulated income. Commissioner v. Glos (Gloss), supra; Welch v. Paine, supra; see, also, Judge Woodrough's dissent in Rheinstrom v. Commissioner, 8 Cir., 105 F.2d 642, 124 A.L.R. 861.

Counsel for Wisotzkey interpret the holding of United States v. Pelzer, supra, as being grounded on the fact that the interests in the corpus were contingent and uncertain, and they further contend that since there was no uncertainty in the case at bar, the Pelzer case is not controlling. Such an assertion is clearly refuted by the express words of the Regulation. Under the Regulation, "future interests" include reversions, remainders, and other interests or estates, whether *vested* or *contingent*. (Italics ours.)

Counsel for Wisotzkey cite five cases in support of their argument. Commissioner v. Wells, 7 Cir., 88 F.2d 339; Noyes v. Hassett, D.C.Mass., 20 F.Supp. 31; Commissioner v. Kempner, 5 Cir., 126 F.2d 853; Smith v. Commissioner, 8 Cir., 131 F.2d 254; Commissioner v. Krebs, 3 Cir., 90 F.2d 880. We give very brief consideration to these cases.

Commissioner v. Wells was specifically overruled by Commissioner v. Gardner, 7 Cir., 127 F.2d 929, on the authority of United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913.

The Noyes case, which followed the Wells case, was a Federal District Court case, and is not binding authority on us, and, moreover, that case has been overruled by the Pelzer case and other cases herein cited.

In the Kempner case, no question was raised as to whether different kinds of rights had been received. The Commissioner there took the position that both the right to income and the right to corpus were future interests. The Commissioner here concedes that right to present income is a present right.

In the Smith case, the trustee had discretionary power to pay either principal or income to the beneficiary and this was held to be a "present interest". This case was criticized in the case of Fisher v. Commissioner, 9 Cir., 132 F.2d 383, as paying too much attention to the purposes of the donor.

In the Krebs case, this court gave no consideration to the nature of the right to corpus. The Commissioner's contentions in the case at bar are not inconsistent with that decision as to the nature of a right to present income.

Subsequent to the oral argument in the instant case, this court handed down its decision in Disston v. Commissioner, 144 F.2d 115, Circuit Judge Biggs dissenting. There is an important factual difference between the Disston case and the instant case.

By the terms of the trust indenture in the Disston case, authority was vested in the Trustees to appropriate to the benefit of the minor donees, from the accumulated income, amounts necessary to defray expenses for the education, comfort and support of the donees. Or, as it might otherwise be stated (within the meaning of the Treasury Regulation), the minor donees were entitled to a present *use, possession* and *enjoyment* of some, possibly all, of the accumulated income. Within the discretion of the Trustees, the accumulated income might be, if necessary, entirely exhausted.

In the instant case we find exactly the same power lodged in the Trustees in respect to the Group II trusts. However, the authority of the Trustees is sharply curtailed and clearly limited in the management of the Group III Trusts. Here, the provision that the income be accumulated is mandatory; no discretion whatever rests in the Trustees. Further, it is expressly required (paragraph 2, Group III Trusts) that the Trustees *"hold as corpus all of the accumulations of this estate up to the time the said beneficiary reaches 21 years of age, * * *"* (Italics ours.) It is equally clear that the Trustees could make no disbursements from this fund.

The donee, under the Group III trust indenture, it is true, has an equitable title in the accumulated income. Yet he is deprived of any present *use, possession* or *enjoyment* of any of the income during the period of accumulation. We consider this fact to be the controlling element in the instant case.

If we examine the trust indentures in the instant case from a realistic and practical point of view, in the light of the statute and Treasury Regulations and decisions

construing the definitions therein set out, we believe that the indentures clearly gave two distinct interests to the beneficiaries: one, a present interest, which the Commissioner agrees is entitled to exclusion, and the other a future interest; under one group of trusts, a future interest in the accumulated income, and under all the trust agreements, a future interest in the corpora.

Under the statute these future interests in accumulated income and corpora are not entitled to exclusion in computing, for tax purposes, Wisotzkey's net gifts.

Wisotzkey now objects to the method of valuation used by the Commissioner in determining the proper amount of exclusion allowed where the beneficiary received present income. It is sufficient here to say that the Commissioner, in arriving at these valuations, used long established tables and well known methods of computation. Wisotzkey made no objection to these values in the Tax Court, nor did he propose other and more suitable methods of valuation.

Since we answer both questions in the affirmative, we, accordingly, affirm the judgment of the Tax Court of the United States.

Affirmed.