GEORGE W. PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LINN M. PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56544, 56545. Filed December 26, 1956.

*Stanley M. Moffat, Esq.*, for the petitioners.
*Emil Sebetic, Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* Respondent has determined deficiencies in the gift tax of the petitioners as follows:

| Year | George W. Perkins | Linn M. Perkins |
|---|---|---|
| 1951 | $2,107.69 | $2,092.43 |
| 1952 | 2,803.31 | 2,871.73 |
| 1953 | 3,538.88 | 3,604.59 |

The sole issue is whether certain gifts in trust constituted gifts of future interests, so as to prevent the deduction therefrom in each year of the exclusions otherwise authorized by law.

All of the facts have been stipulated and are so found.

Petitioners are husband and wife temporarily sojourning in Paris, France. They are citizens of the United States, and have their perma-

nent place of residence in Phillipstown, New York, where they resided during the relevant taxable years. Their gift tax returns for those years were filed with the then collector of internal revenue for the third district of New York.

Petitioner George W. Perkins as settlor created by written instruments separate irrevocable trusts for the benefit of seven grandchildren, as follows:

| Grandchild | Date of birth | Date of creation of trust | Approximate age at creation of trust |
|---|---|---|---|
| 1. Linn Wilson | Feb. 19, 1945 | Dec. 17, 1951 | 6 yrs. 10 mos. |
| 2. Suzanne Wilson | Dec. 26, 1946 | Dec. 17, 1951 | 5 yrs. |
| 3. Wendy Wilson | Oct. 6, 1949 | Dec. 17, 1951 | 2 yrs. 2 mos. |
| 4. Elizabeth Wilson | Dec. 15, 1951 | Dec. 17, 1951 | 2 days. |
| 5. Colin Cabot | Sept. 13, 1950 | Dec. 17, 1951 | 1 yr. 3 mos. |
| 6. George W. Perkins, III | Oct. 27, 1951 | Dec. 17, 1951 | 2 mos. |
| 7. Jennifer Emily Perkins | Sept. 13, 1953 | Dec. 10, 1953 | 3 mos. |

The trust agreements were identical, except with respect to the names of the beneficiaries and trustees. In each trust, the City Bank Farmers Trust Company, petitioner George W. Perkins, and the parents of the individual beneficiary were named as trustees.

The gifts in question consisted of shares of corporate stock and were made to the trusts by both petitioners during the 3 years 1951, 1952, and 1953, as follows:

DONOR—GEORGE W. PERKINS
*Taxable year 1951*

| Donee trust for the benefit of— | Date of gift [1] | Value at date of gift |
|---|---|---|
| 1. Linn Wilson | Feb. 17, 1951 | $12,700.00 |
| 2. Suzanne Wilson | Feb. 17, 1951 | 9,525.00 |
| 3. Wendy Wilson | Feb. 17, 1951 | 6,350.00 |
| 4. Elizabeth Wilson | Feb. 17, 1951 | 3,175.00 |
| 5. Colin Cabot | Feb. 17, 1951 | 4,762.50 |
| 6. George W. Perkins, III | Feb. 17, 1951 | 3,175.00 |
| Total gifts | | $39,687.50 |

*Taxable year 1952*

| | Date of gift | Value |
|---|---|---|
| 1. Linn Wilson | Feb. 6, 1952 | $2,805 |
| 2. Suzanne Wilson | Feb. 6, 1952 | 2,805 |
| 3. Wendy Wilson | Feb. 6, 1952 | 2,805 |
| 4. Elizabeth Wilson | Feb. 6, 1952 | 2,805 |
| 5. Colin Cabot | Feb. 6, 1952 | 2,805 |
| 6. George W. Perkins, III | Feb. 6, 1952 | 2,805 |
| Total gifts | | $16,830 |

*Taxable year 1953*

| | Date of gift | Value |
|---|---|---|
| 1. Linn Wilson | Feb. 19, 1953 | $2,573.13 |
| 2. Suzanne Wilson | Feb. 19, 1953 | 2,573.13 |
| 3. Wendy Wilson | Feb. 19, 1953 | 2,573.13 |
| 4. Elizabeth Wilson | Feb. 19, 1953 | 2,573.13 |
| 5. Colin Cabot | Feb. 19, 1953 | 2,573.13 |
| 6. George W. Perkins, III | Feb. 19, 1953 | 2,573.13 |
| 7. Jennifer Emily Perkins | Dec. 18, 1953 | 2,012.50 |
| Total gifts | | $17,451.28 |

[1] The date of gift set forth above (Feb. 17, 1951) is taken from the stipulation of facts. However, since these trusts were created on Dec. 17, 1951, the earlier date is probably the result of a typographical error, and the gifts in question were undoubtedly made simultaneously with the creation of the trusts or thereafter in 1951.

DONOR—LINN M. PERKINS

*Taxable year 1951*

| Donee trust for the benefit of— | Date of gift | Value at date of gift |
|---|---|---|
| 1. Linn Wilson | Dec. 21, 1951 | $12, 675. 00 |
| 2. Suzanne Wilson | Dec. 21, 1951 | 9, 506. 25 |
| 3. Wendy Wilson | Dec. 21, 1951 | 6, 337. 50 |
| 4. Elizabeth Wilson | Dec. 21, 1951 | 3, 168. 75 |
| 5. Colin Cabot | Dec. 21, 1951 | 4; 753. 13 |
| 6. George W. Perkins, III | Dec. 21, 1951 | 3, 168. 75 |
| Total gifts | | $39, 609. 38 |

*Taxable year 1952*

| | | |
|---|---|---|
| 1. Linn Wilson | Jan. 31, 1952 | $2, 879. 38 |
| 2. Suzanne Wilson | Jan. 31, 1952 | 2, 879. 38 |
| 3. Wendy Wilson | Jan. 31, 1952 | 2, 879. 38 |
| 4. Elizabeth Wilson | Jan. 31, 1952 | 2, 879. 38 |
| 5. Colin Cabot | Jan. 31, 1952 | 2, 879. 38 |
| 6. George W. Perkins, III | Jan. 31, 1952 | 2, 879. 38 |
| Total gifts | | $17, 276. 28 |

*Taxable year 1953*

| | | |
|---|---|---|
| 1. Linn Wilson | Feb. 17, 1953 | $2, 616. 25 |
| 2. Suzanne Wilson | Feb. 17, 1953 | 2, 616. 25 |
| 3. Wendy Wilson | Feb. 17, 1953 | 2, 616. 25 |
| 4. Elizabeth Wilson | Feb. 17, 1953 | 2, 616. 25 |
| 5. Colin Cabot | Feb. 17, 1953 | 2, 616. 25 |
| 6. George W. Perkins, III | Feb. 17, 1953 | 2, 616. 25 |
| 7. Jennifer Emily Perkins | Dec. 15, 1953 | 2, 050. 00 |
| Total gifts | | $17, 747. 50 |

When petitioners first considered making such gifts they sought the advice of an attorney, and in February 1951 petitioner George W. Perkins received the first draft of the proposed trust agreement. He inquired as to the availability of annual exclusions, and advice was sought of tax counsel. The latter's suggestions were approved, and the trust deeds were prepared and executed.

Petitioners' chief objectives in setting up the trusts were to provide for adequate education of the grandchildren, to secure for them assurance of available funds for adequate support, maintenance, and medical care, and to make a fund available for each grandchild eventually to dispose of as he or she should see fit.

Each trust was to continue until the respective beneficiary should reach the age of 25. Income, and, if necessary, principal, was to be applied in the discretion of the trustees to the education, maintenance, and support of such beneficiary. The trustees were to accumulate any income not so expended and pay such net income or the assets in which it is invested to the beneficiary upon his or her attainment of 21 years of age. Thereafter the trustees are to distribute net income currently to the beneficiary until 25 years of age, at which time the trust is to terminate and the principal is to be paid over. However, each beneficiary, or his parent or duly appointed guardian,

was given the right at any time to demand and receive as property of the beneficiary all or part of the principal and accumulated income. Various provisions governed the distribution of any remaining principal and income should a beneficiary predecease the trust.

No income or corpus of any of the trusts has been distributed. No exercise of any of the foregoing powers to withdraw principal or income has taken place, and all of the trusts were still in existence at the time of trial. When the trusts were created and at the time each of the foregoing gifts was made all of the beneficiaries were young and insufficiently mature to make an intelligent, effective demand for the termination of the respective trusts, or for the distribution of all or a part of income or corpus.

The parents of each beneficiary were and are fully able to provide adequately for his or her support, maintenance, education, and medical care. Petitioners were aware of this, expected such state of affairs to continue, and did not anticipate, absent unforeseen emergency, that any parent or guardian would demand principal or income. Petitioners, however, recognized the possibility that future needs or misfortunes might arise, which would require or make desirable the existence of such power. No guardians have been appointed except with respect to an appointment of the mother of one of the beneficiaries. That appointment took place on December 17, 1952. At all times material the parents of the beneficiaries were adults.

On each of the gift tax returns in question petitioners claimed annual exclusions of up to $3,000 for each beneficiary. Respondent has disallowed such exclusions on the ground that the gifts were of future interests. The deficiencies determined by him have resulted solely from that disallowance.

The issue as to whether a gift is of a present or future interest is not one of the time of vesting, but rather whether there is any substantial barrier to the present use, possession, or enjoyment by the donee. *Commissioner* v. *Disston*, 325 U. S. 442; *Fondren* v. *Commissioner*, 324 U. S. 18; *Ryerson* v. *United States*, 312 U. S. 405; *United States* v. *Pelzer*, 312 U. S. 399; *Commissioner* v. *Sharp*, 153 F. 2d 163 (C. A. 9). There is infinite variety in the possible terminology of trust instruments and the circumstances surrounding their creation, and each case must be decided in the light of its own trust instrument and surrounding circumstances. *Commissioner* v. *Kempner*, 126 F. 2d 853 (C. A. 5).

The trust instruments by themselves appear to have given a present interest to the beneficiaries. Each provides that notwithstanding all other provisions the beneficiary, his duly appointed guardian, or his parent may at any time demand and receive all of the income and principal. To be sure, the beneficiaries were minors and unable effectively to exercise that right, and only with respect to two gifts in

1953 to one of the seven beneficiaries was there a duly appointed guardian at the time of the making thereof. Had the power to demand income or principal been limited to the beneficiaries or their duly appointed guardians, respondent's position, at least as to all gifts other than the two aforementioned, might well be tenable; there would have been at the time such gifts were made no person who could make an effective demand for immediate use, possession, and enjoyment by the beneficiaries. *Stifel* v. *Commissioner*, 197 F. 2d 107 (C. A. 2), affirming 17 T. C. 647. But cf. *United States* v. *Baker*, 236 F. 2d 317 (C. A. 4); *Gilmore* v. *Commissioner*, 213 F. 2d 520 (C. A. 6), reversing 20 T. C. 579; *Kieckhefer* v. *Commissioner*, 189 F. 2d 118 (C. A. 7), reversing 15 T. C. 111.

In the instant proceeding, however, this right was also given to the adult parents of the beneficiaries, none of whom appears to have been incompetent to exercise the power thus bestowed. Therefore, with respect to each of the gifts in question there was at all times someone who could have made an effective, binding demand for principal and income. By the terms of the trusts alone, there was no substantial bar to present use, possession, and enjoyment by the donees.

Petitioners expected the trusts to continue for a substantial period and did not anticipate actual exercise by any of the parents of that power. But we do not agree with respondent that such expectation is more than precatory, or that it vitiates the clear right unmistakably given. Respondent may not pick and choose from among the provisions of the trust. He may not preserve those parts of the trust language he deems helpful to his position and ignore, by his *ipse dixit* that they are "vitiated," those parts of such instruments which are fatal to his contentions. The parents of the beneficiaries were given the power by clear and unambiguous language to demand and receive on behalf of their respective children all or part of the principal and accumulated income. We cannot see how this power is "vitiated" by the opinion of the settlors that it would be unwise to exercise it under existing conditions or their expectation, however it may be justified by subsequent events, that there would in fact be no such exercise. Respondent has cited no authority, and we know of none, that a demand by the parents could have been properly resisted. The trusts in literal terms created present interests.

We agree with respondent that the circumstances surrounding the creation of the trusts and the making of the gifts are relevent factors, to be considered along with the trust instruments themselves. However, we cannot find from such facts that the gifts were not indeed of present interests. It is admitted that petitioners expected that the power given to the parents of the beneficiaries would not be exercised, at least in the absence of a substantial change of circumstances, and this expectation has apparently proved justified. The parents

were and have continued to be financially able to support their children without recourse to trust income or principal. Nonetheless, they have continuously had the right to make such demand since the time the gifts were made. The existence or nonexistence of that right at the relevant time must determine the nature of the gifts, not the subsequent conduct of the parents in choosing whether or not to exercise it. Whatever the motives of the petitioners, their hopes or expectations, we cannot hold that the parents of the beneficiaries did not indeed have the right to make such demand at any time. They are clearly given such right by the terms of the trust instruments. The surrounding circumstances show only that it was unlikely that they would choose to exercise it, but do not negate its existence.

Respondent also claims that petitioners had such control over their children (the parents of the beneficiaries) that they could effectively prevent them from exercising the right so conferred upon them by the trust instruments. Nothing in the record before us supports this contention.

Finally, respondent points to the fact that the trust instruments were drafted with the gift tax exclusions in mind, and cites *Gregory* v. *Helvering*, 293 U. S. 465. In the *Gregory* case the formal appearance of the transactions was misleading and the legal consequences normally flowing therefrom were not in fact intended. In the instant proceeding, regardless of the petitioners' motives, or why they did what they in fact did, the legal rights in question were created by the trust instruments and could at any time thereafter be exercised. Petitioners having done what they purported to do, their tax-saving motive is irrelevant.

In the instant proceeding petitioners decided to and did create trusts for the benefit of their minor grandchildren, and thereafter made gifts of property to those trusts. Neither the trusts nor any of the gifts were unreal or illusory. Petitioners in every relevant transaction did what they purported to do. In so doing, they chose the path of least tax cost. There is nothing improper in so doing, and their actions are no less valid and real than had they chosen instead the path leading to greater tax liability. Their tax liability must be based on what they in fact did, not upon what they might have done. The gifts were of present interests, and respondent erred in determining otherwise.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

HARRON, *J.*, dissenting: I respectfully dissent because I am unable to conclude that the demand clause in Article First of each trust is effective to make the gifts gifts of present interests in trust corpus

(which is principal plus any accumulated income) under the reasoning of *Fondren, supra.* Furthermore, even if it could be held that there are gifts of present interests, there is the question of how much, if any, of trust principal can be applied to the permitted uses, and petitioners have not assumed the burden of showing that the value of what they claim is other than future interests. On this point *Disston, supra,* requires sustaining respondent.

The problem here is not concerned with the nature of the gifts with respect to current net income of the trusts because disbursement thereof each year is conditioned upon the exercise by trustees of their discretion as to how much shall be applied by them for the stated purposes according to what they "shall deem suitable and proper." Therefore, exercise or nonexercise of this discretion makes the interests in current income future interests under *Fondren, supra.*

Attention turns, then, to the interests in trust corpus. In this matter all of the provisions of each trust agreement together with surrounding circumstances, intentions of the settlor and donors, and the conditions of the donees are taken into account. Comparison is made of the facts here with those in cases which have held that gifts of present interests have been made. Cf. *Commissioner* v. *Sharp, supra; Fisher* v. *Commissioner,* 132 F. 2d 383, affirming 45 B. T. A. 958; *Arthur C. Stifel,* 46 B. T. A. 568; *Chas. F. Roeser,* 2 T. C. 298, 304. It is observed that where payment of income or principal is mandatory and is not conditioned upon exercise by anyone of discretion, there are gifts of present interests to the donee. *Fondren, supra,* makes it clear that even in the instance of minors under the legal disability of being unable to manage and control property, there is no gift of a present interest in trust corpus unless it can be applied immediately for the minor's use. It is also observed that the Perkins trusts are of a particular type, i. e., so much of income or principal or both, as shall be necessary, shall be applied for the education and support of the beneficiary during his minority, and the trusts end when the beneficiary becomes 25 years. These are restricted trusts; the beneficiary and anyone acting for him cannot compel application of income or principal except for the purposes stated in the trust. The word "needs" is not used in these trusts, but the need of the beneficiary is implicit because the purposes for the use of both income and principal are restricted by descriptions and the trustees are directed to decide what is "suitable and proper." It is stipulated that the settlor and donors had in mind making provision for each beneficiary's education and support, including the best of medical care; and they were aware, when the trusts were created and the gifts were made, that then the respective parents of each beneficiary were able to provide their child with "adequate support, education, and medical care," and that the respective parents would continue to have that ability dur-

ing the minority of their child barring "any emergency such as the physical incapacity or loss of earning power of the parents * * *, or the dissipation of the funds or estates of such parents or other similar misfortune which would render such parents unable to provide for such grandchildren the best of education, medical care and support as desired for such grandchildren by petitioners."

Since the respective parents were able to provide for their child at the time the trusts were created and the gifts were made, it is evident that under the first provision in Article First there is the inherent condition of the existence of some degree of *need* as the basis for the trustees' exercise of their *discretion* "to apply" principal to the prescribed uses. Insofar as the trustees were to apply principal for a beneficiary's use, under their discretion, gifts of principal are gifts of future interests. Here, as in the *Fondren* case,

the donors' laudable desire to make provision for their grandchildren in case of future need cannot nullify the deferment which the recited absence of present need, coupled with the terms of the trust, brought about.

The parties have stipulated (par. 21) that at the time the trusts were created and the gifts involved were made, petitioners had no reason to believe that emergencies of the sort described above would occur *at any immediate or specific time* requiring a distribution to be made of income or corpus under any provisions of the trusts.

Next, there is the second provision [1] in Article First, which for convenience may be referred to as the "demand" clause, which is the provision which the majority view regards as the crux of the issue presented.[2] I believe that there is an obvious way of construing the demand clause.

---

[1] * * * Notwithstanding anything to the contrary herein contained the Settlor's said * * * [beneficiary], or a parent of said * * *[beneficiary] or a guardian of said * * * [beneficiary] duly appointed by a Court of competent jurisdiction, at any time shall have the right to *demand* and receive from the Trustees, and the Trustees at any time, as if holding the trust property as guardian of the said * * * [beneficiary] of the Settlor, *may pay* to the said * * * [beneficiary], or *may pay* to a parent of said * * * [beneficiary] or may pay to said guardian appointed by a Court as aforesaid, *any or all accumulated income and any or all of the principal of the trust fund*. In addition to the right thereby granted to the beneficiary at any time to demand and receive all or any part of the said trust estate, the beneficiary shall be entitled at any time to terminate the trust estate in whole or in part whenever the said beneficiary, * * *, or his guardian duly appointed by the Court as aforesaid, *shall make due demand* therefor *by instrument in writing* filed with the then Trustees acting hereunder * * * (Italics supplied.)

[2] The Perkins trusts were created December 17, 1951. It is interesting to find that in this Court's opinion in *Frances McGuire Rassas,* 17 T. C. 160 (filed Aug. 6, 1951, shortly before the Perkins trusts were created), affd. 196 F. 2d 611, a suggestion was made, at page 166, which foreshadowed the problem presented here which, however, was neither raised nor decided in the *Rassas* case. There it was said about the Rassas trust,

The trust indenture in the instant case did not give the beneficiary nor anyone acting for her the right to terminate the trust. Not only did the beneficiary have no right to terminate the trust in the instant case but neither the beneficiary nor anyone acting for her has the right to *demand* payment of the income. Only such income of the trust estate is payable to the beneficiary as the trustees in their *sole discretion* shall decide. * * *

It is that if the trustees should fail to exercise their discretion, as first directed, "to apply" income or principal for the uses and purposes set forth during a beneficiary's minority, as shall be "suitable and proper," i. e., in accordance with needs, then a parent of the beneficiary (who is also a trustee) could demand and receive trust corpus (principal, or accumulated income, or both). Viewed in this light, the demand clause takes care of the possibility that the trustees might, at some time, be unable to agree upon the matter of whether to exercise their discretion, or upon the question of how much of principal should be deemed to be a "suitable and proper" disbursement at a certain time for any or all of the designated purposes. Under this view, the demand clause is a "but if" clause, and inherently its use depends upon the occurrence of some contingency in the future. The contingency might be failure of the trustees to exercise their discretion, or "the need of the beneficiary, not existing when the trust or gifts take effect legally, but arising later upon anticipated though unexpected conditions," such as the happening of such emergencies to the parents of a beneficiary as, it has been stipulated, the petitioners held in mind as a possibility, which is part of the experiences of living. See *Fondren, supra.* Or, the demand clause may be viewed as a method of altering the first direction to the trustees "to apply" trust principal so as to permit them "to pay over" trust principal to a parent of a beneficiary (not specified in the first instance). Or, the demand clause might be viewed as a means for substituting the judgment of a parent (or guardian) for that of the trustees as to when a disbursement of principal shall be made, and as to what amount shall be deemed suitable and proper. Under this view discretion is taken out of the trustees and given to a parent (or guardian), and the exercise by a parent of his discretion becomes the contingency which makes the gifts of principal gifts of future interests. And, again, this conclusion is supported by the stipulation (par. 19) that the petitioners, when the trusts were created and the gifts were made, believed that the parents of a beneficiary would not make a demand during his minority for distribution of all or part of the trust corpus.

The majority view is that the demand clause in Article First of the trusts establishes that each beneficiary received, at the time the trusts were created and the gifts were made, the "right to substantial present economic benefit" from a trust corpus, free from any condition or contingency which would put a barrier of some period of time between the will of the beneficiary presently to enjoy what was given him and his enjoyment thereof. With this conclusion, I cannot agree. Under the demand clause, a parent, necessarily, would have to be exercising judgment and discretion in making a demand for any distribution, all of which amounts to the implicit existence of a condition

within the critical, second portion of Article First, the contingency there being the exercise of the discretion of a parent of a beneficiary. Even under the demand clause, upon which petitioners rely, the gifts in question are gifts of future interests.

There is a third provision in Article First of each trust relating to termination of the trust upon the demand of either the beneficiary or his guardian appointed by a court. If such demand is made by a guardian, it must be by a written instrument. There can be no doubt that the clause on termination involves a future interest since each beneficiary was a minor when the gifts were made and, except in one instance, there was no court appointed guardian for any beneficiary. Cf. *Stifel* v. *Commissioner, supra.*

The first part of Article First gives a discretionary power to the trustees as to distributions of both current income and principal; the second part gives a discretionary power as to distributions of principal to one particular trustee, a parent, notwithstanding the *form* used in the demand clause of stating that a parent may demand and receive, at any time, distribution of all or part of trust principal, the situation being that a parent who may make such demand is also a trustee. The respondent's determinations should be sustained under authority of *Fondren* v. *Commissioner, supra.*