JACOB W. BLASDEL AND RUTH ALICE BLASDEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7420–70. Filed September 25, 1972.

*John A. Bailey* and *William C. W. Haynes*, for the petitioners.
*James N. Mullen*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined identical deficiencies of $5,959.50 in the gift tax liabilities of Jacob W. Blasdel and Ruth Alice Blasdel for the calendar year 1967. The issue presented for decision is whether gifts of fractional beneficial interests in a trust made by petitioners to 18 family members (their children, the children's spouses, and petitioners' grandchildren) were gifts of present rather than future interest in property so as to entitle each petitioner to an exclusion from taxable gifts of $3,000 for each donee.

### FINDINGS OF FACT

Jacob W. Blasdel and Ruth Alice Blasdel are husband and wife and resided in Richmond, Tex., at the time their petition was filed. Petitioners filed gift tax returns for 1967 with the district director of internal revenue at Austin, Tex.

In 1967, petitioners wished to give interests in 289.26 acres of land they owned in Fort Bend County, Tex., to 18 family members. As to the manner in which the gifts were to be made, petitioners consulted with their attorney, who was experienced in real estate transactions, and with their son-in-law, a certified public accountant. The latter formulated an estate plan for petitioners whereby the land would be transferred to the attorney as trustee, and he would endeavor to subdivide and sell the tract of land and distribute the proceeds to the beneficiaries of the trust.

Because the land had generated very little net income from farming over the years, it was contemplated that the trust distributions would most likely consist of proceeds from the sale of the land. A trust was chosen as the estate-planning vehicle mainly because gifts of beneficial interests in the trust could be made without fragmenting the trustee's control over the subdividing and selling activities.[1] Tax advice was sought from the son-in-law who designed the plan with a view toward minimizing petitioners' estate and gift tax liabilities.

On November 30, 1967, petitioners, as grantors, and their attorney, as trustee, excuted an instrument declaring an irrevocable trust, re-

---

[1] The purpose of the trust arrangement was articulated in part IX of the trust instrument as follows:

"It should be definitely understood and agreed that said trust is being created in order to allow the trustee to manage and develop the corpus of the trust in an orderly and businesslike manner, to liquidate same in the most profitable way and to distribute the proceeds of the trust to all beneficiaries in an equitable manner. * * *"

ferred to as The Edgewood Farm Trust. The beneficiaries named in part I of the instrument were the petitioners "or * * * such other person or persons to whom said beneficiaries may transfer and assign a beneficial interest under the terms hereof."

Part VI provided that the trust was to continue during "the natural lives of * * * [petitioners], or as long as either shall live, plus an additional five (5) year term after the death of the survivor of the two grantors." The term could be extended for an additional 10 years by a majority vote of the board of directors of the Rosenberg State Bank.

Part VII of the trust instrument, which is the only provision empowering the trustee to make distributions, contains in part the following paragraphs:

The trustee shall make periodic disbursements of the income and corpus of the trust, provided that all beneficiaries of the trust are in accord and unanimously agree that such distribution be made. Should it not be possible to obtain unanimous approval of all the beneficiaries, and should a majority of the beneficiaries be desirous that a distribution be made, the trustee will be authorized to make such distribution provided that it be authorized by a majority vote of the members of the Board of Directors of the Rosenberg State Bank.

     \*       \*      \*      \*      \*      \*      \*

No disposition, charge or encumbrance on the corpus or income of this trust, or any part thereof, by any beneficiary of this trust by way of anticipation shall be valid or in any way binding upon the trust, and no beneficiary shall have the right to assign, transfer, encumber, anticipate, pledge, sell, alienate, or otherwise dispose of such income or corpus, or any part thereof, until the same shall be paid to such beneficiary, and no income or corpus, or any part thereof, shall be liable to any claim of any creditor of any such beneficiary.

At the same time and pursuant to the trust agreement, petitioners executed a warranty deed conveying the 289.26 acres of land to their attorney as "Trustee."

Contemporaneously with the execution of the trust agreement and the deed, petitioners, in their new capacity as beneficiaries, executed 18 virtually identical instruments conveying to each donee-child, his or her spouse, and each of petitioners' grandchildren "an undivided 0.0118 [or 0.0708, in the case of two grants] beneficial interest in and to the trust estate * * * designated as The Edgewood Farm Trust." All of the gift instruments contained the following language:

* * * [Petitioners have conveyed to a designated person an undivided beneficial interest] it being intended by this instrument to transfer and assign unto the Grantee named herein that proportion of all rights, benefits and ownership in and to said trust estate owned by the undersigned provided, however, it is distinctly understood and agreed that the interest conveyed hereby is limited to the * * * [0.0118 or 0.0708] interest hereinabove described and the rights and benefits conveyed to the Grantee named herein shall be so limited to such proportion of the entire trust estate.

It is understood and agreed that by the execution and delivery of this instru-

ment, the trustee named in said Trust Agreement, or any substitute trustee, is authorized and directed to make distribution of the corpus and income, in accordance with the terms and conditions of said Trust Agreement, of the interest hereby conveyed to the beneficiary named herein.

The stipulated fair market value of the land on November 30, 1967, was $506,205. The land constituted the trust's sole asset at the time the beneficial interests in the trust were conveyed. The stipulated fair market values of the 0.0118 and 0.0708 fractional interests were $5,973 and $35,839, respectively.

In petitioners' individual gift tax returns filed for 1967, each spouse consented to having the gifts reported therein considered as having been made one-half by the other. Petitioners claimed joint annual exclusions for each donee. Respondent disallowed the exclusions on the ground that the gifts consisted of future interests in property.

OPINION

Section 2503 (b)[2] excludes from a donor's taxable gifts made during a calendar year the first $3,000 given to any person.[3] However, this exclusion does not apply to "gifts of future interests in property." The question to be decided is whether the 18 fractional beneficial interests which petitioners gave in 1967 to their family members fall within the "future interests" exception. We are compelled to conclude that they do.

The term "future interests" as used in section 2503 (b) is not defined in the Code. However, section 25.2503–3(a), Gift Tax Regs., states that the term "future interests" includes "interests or estates, * * * which are limited to commence in use, possession or enjoyment at some future date or time." *United States* v. *Pelzer*, 312 U.S. 399, 403 (1941); *Commissioner* v. *Disston*, 325 U.S. 442, 446 (1945). Conversely, section 25.2503–3(b) of the regulations defines a "present interest" in property as an "unrestricted right to the immediate use, possession, or enjoyment of property or the income from property."

Thus, a helpful basis for distinguishing a future from a present interest is whether, at the date of the gift,[4] "there is postponement of enjoyment of specific rights, powers or privileges which would be forthwith existent if the interest were present." *Commissioner* v. *Glos,*

---

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.
SEC. 2503. TAXABLE GIFTS.
   (b) EXCLUSIONS FROM GIFTS.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. * * *
[3] In the case of a trust, the beneficiary, not the trustee, is the "person" to whom the statute refers. *Helvering* v. *Hutchings,* 312 U.S. 393, 395–396 (1941).
[4] *Commissioner* v. *Brandegee,* 123 F. 2d 58, 61 (C.A. 1, 1941).

123 F. 2d 548, 550 (C.A. 7, 1941). In making this determination, it is the interest which the donee receives rather than the interest with which the donor parts that must be examined. *Wisotzekey* v. *Commissioner*, 144 F. 2d 632, 636 (C.A. 3, 1944). Furthermore, if the donee's enjoyment is postponed, the gift is a future interest notwithstanding the definiteness of the amounts of the gifts [5] or the immediate vesting of the donee's rights.[6] *Fondren* v. *Commissioner*, 324 U.S. 18, 26 (1945).

Because of the many and varied ways in which gifts in trust may be made, there is no simple rule by which to discern present from future interests. Rather, it is necessary in each case to scrutinize the trust provisions and the surrounding circumstances and decide the case on its individual facts. *Commissioner* v. *Kempner*, 126 F. 2d 853, 854 (C.A. 5, 1942).

The facts in petitioners' case are somewhat unusual. Petitioners created a trust naming themselves as beneficiaries, and contemporaneously conveyed fractional shares of their beneficial interests to their 18 family members. The trust agreement expressly contemplated that this would be done. Therefore, there were 20 beneficiaries of the trust after the transfers were made. As transferees or assignees, the donees acquired their fractional beneficial interests subject to the same terms and limitations as petitioners held theirs.

Petitioners contend that the donees suffered no postponement of enjoyment of their rights in the trust's income or corpus, but we think the restrictive distribution provision contained in part VII of the trust instrument is fatal to petitioners' cause. Under the terms of that provision, no distribution of income or corpus can be made unless "all beneficiaries of the trust are in accord and unanimously agree that such distribution be made." Alternatively, if unanimous approval of the beneficiaries cannot be obtained, a majority of the beneficiaries as well as a majority of the members of the board of directors of the Rosenberg State Bank must agree to authorize a distribution.

Unless or until one of these specified forms of agreement occurs,

---

[5] It is stipulated that "The fair market value of the property conveyed by petitioners by warranty deed to R. W. Lindsey, Trustee, on November 30, 1967, was $506,205.00." It is further stipulated that "The fair market value of a 0.0118 interest in the estate or property interests created under the petitioners' agreement on November 30, 1967 * * * at that time was $5,973.00." Since this latter figure was computed using the total value of the property conveyed, we do not understand that it reflects any discount attributable to the restrictions placed on the beneficiaries' rights to the income or corpus. In any event, as stated in *Fondren* v. *Commissioner*, 324 U.S. 18, 26–27 (1945), "the crucial thing is postponement of enjoyment, not the fact that the beneficiary is specified and *in esse* or that the amount of the gift is *definite and certain.*" (Emphasis added.)

[6] In *Hessenbruch* v. *Commissioner*, 178 F. 2d 785, 786–787 (C.A. 3, 1950), the court said: "It is * * * sufficient for the purposes of this case to note that the term [future interests] establishes a temporal requirement undisturbed by the vesting of title and free of local definitions of property interests."

the donees can effectively demand neither the income nor the corpus of the trust. This limitation means that, viewed as of 1967, the beneficiaries might not receive any part of the trust's asset or its fruits until the termination of the trust, at least 5 years after the death of the survivor of the two grantors. We think this provision was a substantial barrier to the donees' present enjoyment of petitioners' gifts of the fractional beneficial interests in the trust.

The distribution provision of The Edgewood Farm Trust is analogous to one considered in *Ryerson* v. *United States*, 312 U.S. 405 (1941). In that case, the trust instrument directed the trustees, upon receipt of a written request signed by two named beneficiaries, to distribute and pay over the principal of the trust to the named beneficiaries or their issue as shall be specified in the request. The Supreme Court rejected an argument made by the beneficiaries, who were also serving as trustees, that the power of control over the property which the beneficiary-trustees could exercise in their own favor was a present interest in the trust property. The Court held that the gifts were of future interests, stating (pp. 408–409) :

The gifts of a separate equal share of the corpus of the * * * trust to each of the two trustees in the event of their joint request that the trust be terminated was a gift upon a contingency which might never happen. * * * While a present power of disposition for one's own benefit is the equivalent of ownership, * * * here the joint power was not for the joint benefit of the donees of the power. Its exercise could only operate for the benefit of each to the extent of one-half of the trust property and then only in the event that both agreed to unite in its exercise. In any case use and enjoyment of any part of the trust fund by either was postponed until such time as both joined in the exercise of the power. * * * [7]

We think this reasoning is dispositive of the instant case. To the same effect, see *Hutchings-Sealy Nat. Bank* v. *Commissioner*, 141 F. 2d 422, 424 (C.A. 5, 1944) ; *Howe* v. *United States*, 142 F. 2d 310, 312 (C.A. 7, 1944), certiorari denied 324 U.S. 841 (1944) ; and *Jennie Brody*, 19 T.C. 126, 131 (1952).[8]

According to the rationale of *Ryerson* v. *United States, supra* at

---

[7] Petitioners attempt to distinguish *Ryerson* v. *United States,* 312 U.S. 405 (1941), on several grounds, none of which is convincing. The ground on which they lay major stress is the language quoted here to the effect that "the joint power was not for the joint benefit of the donees of the power." We think the Supreme Court was merely pointing out that the interests of the beneficiaries were not in the nature of a joint tenancy in the trust property. The same is, of course, true here.

[8] Petitioners argue that part VII of the trust instrument authorizes the trustee to make distributions unless one or more of the beneficiaries objects ; they characterize such provision as a "condition subsequent." This argument is based on a misreading of the instrument. The trustee is authorized to make distributions "provided" the requisite agreements are obtained. This plainly means that before any distribution can be made, the agreement of all the beneficiaries is required or, alternatively, a majority of the beneficiaries plus a majority of the bank's directors.

408, petitioners' gifts are future interests because each donee-beneficiary's use and enjoyment of the trust's asset is subject to "a contingency which might never happen." That is, the beneficiaries' rights to enjoy the income and corpus of the trust are contingent upon their agreement to receive distributions. Since the donees' enjoyment is expressly restricted by the terms of the trust instrument, we think it adds nothing to speculate on the probability argued by petitioners, viz, that there was no more than a "remote" possibility that any of The Edgewood Farm Trust beneficiaries would object to receiving a distribution.

In any event, the contingency in *Ryerson*, that the two beneficiary-trustees receive a request signed by themselves, was far less substantial than the contingency of gaining the unanimous consent of 20 beneficiaries,[9] or the approval of a majority of the beneficiaries plus a majority of the directors of the bank. Also, the inclusion of the alternative procedure for approving distributions, i.e., by a majority of the beneficiaries plus a majority of the bank directors, suggests that the drafters of the trust instrument were doubtful that unanimous approval would always be obtained. In fact, petitioners are themselves beneficiaries and can, if they choose, prevent unanimity.

Petitioners rely on *George W. Perkins*, 27 T.C. 601 (1956), acq. 1965–2 C.B. 6, for the proposition that the barrier to present enjoyment must be substantial to support classification of a gift as a future interest. Petitioners argue that they intended to create no such barrier to the donees' enjoyment of their beneficial interests. They emphasize that the trust device was adopted merely to permit an orderly liquidation of the subdivided property and its proceeds rather than to restrict the distribution of the trust corpus and income.

Although the touchstone of trust construction is, indeed, the grantors' intent, we do not think petitioners' testimony at the trial is sufficient to set aside the memorial of their intent as explicitly recorded in the trust instrument. "So far as the argument turns on the motive of the donors, it may be answered that the statute and the regulation make no such test." *Fondren* v. *Commissioner*, *supra* at 28.

The alleged barrier to the donees' present enjoyment of the gifts in the *Perkins* case was entirely different from that in the instant one. In that case, the donees were minors and the trust instruments provided that a beneficiary, his duly appointed guardian, or his parent could demand and receive at any time all of the income and principal of the trust. This Court held that the interests so created were present

---

[9] We recognize that several of the beneficiaries are minor children, and the trustee testified that he would be willing to accept the decision of their parents as to whether distributions should be made. While this procedure may reduce the number of individuals whose agreement is required, it does not affect the applicability of the *Ryerson* rule.

ones, pointing out (27 T.C. at 605) that "with respect to each of the gifts in question there was at all times someone who could have made an effective, binding demand for principal and income." In the instant case, the joint agreement of others, not merely someone acting on behalf of a particular beneficiary, is required for an effective demand. It is the absence of an unrestricted right on the part of each of the beneficiaries to make such a demand that undermines petitioners' present-interests position.

Petitioners' reliance on *Commissioner* v. *Kempner, supra,* is also misplaced. There the terms of the trust provided (126 F. 2d at 854) that "the trustees, 'Upon collection of any sums of money, whether as principal or interest, or both * * * shall as soon as reasonably practicable distribute the same among the beneficiaries, after deducting and retaining all necessary expenses incurred.'" The donor had transferred into trust, each at a different time, two non-interest-bearing secured notes payable approximately 4 and 3 years, respectively, from the dates of the transfers. The Court of Appeals for the Fifth Circuit found (p. 854) that the beneficiaries had "present rights" in the net proceeds of the notes, and "the mere fact that the notes were not by their terms payable until a future time does not * * * compel a finding that the gifts were of future interests."

In the *Kempner* case, there was no limitation on the beneficiaries' *present rights* to the trust fund referred to in the trust instrument; in the instant case, there is such a limitation. The holding in *Kempner* can be more accurately understood as standing for the proposition, stated in Gift Tax Regs. section 25.2503–3(a), that "'Future interests' is a legal term, * * * [and] has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payments in the future."

Petitioners also argue that, notwithstanding the restrictions on the donees' rights prescribed by the trust instrument, the fractional beneficial interests are assignable and, therefore, are present interests in property. Petitioners reason that each donee received "substantial present economic benefit" in the transferred property because, as a beneficiary, each had the power to dispose of his trust interest for a stipulated fair market value.[10]

Even if we are to assume that this argument was merely overlooked in a host of decided cases that have not mentioned it, we think it lacks

---

[10] This argument has extremely broad implications since the general rule is that, unless a beneficiary's interest is made inalienable by the terms of the trust, he may transfer his interest to another. See 2 Scott, Trusts, sec. 132, pp. 1072–1073 (3d ed. 1967) ; Bogert, Trusts and Trustees, sec. 188, pp. 280–281 (2d ed. 1965). Most of the cases involving the "future interests" provision have been decided without reference to whether the donee had the right to alienate his gift.

# 1022

merit. The "property" to which the future-interests provision in section 2503(b) refers in the case of a gift in trust is not the interest in the trust as such but the interest in the property which is entrusted. In the ordinary case, the donor transfers property to a trust, designating a beneficiary of the corpus or the income, and the future-interests issue is resolved by examining the extent of the donee-beneficiary's rights to the income or the corpus of the trust, not the donee's trust interest as such. The rule must be the same here even though petitioners took two steps rather than one in creating the disputed interests.

The argument here advanced by petitioners was rejected in *Alma S. Hay*, 47 B.T.A. 247, 251 (1942), where the Board of Tax Appeals said:

we are presented with the simple question whether a deed of gift conveying a future estate, such as a remainder, deals with a present interest merely because there is no prohibition of anticipatory alienation.

It seems evident that, since "future interests" unquestionably include even vested remainders,[3] a form of property which is readily transferable, the mere power to realize some present benefit by an immediate disposition of a beneficiary's interest will not suffice to convert an enjoyment which the donor has cast into the form of a postponed expectancy into a true present interest. The mere power of present disposition can not be the test, or at least such estates as vested remainders would be present interests. * * * [Footnote omitted.]

We may assume that the donee could sell his gift or give it to another. The recipient might then be in the donee's shoes. But he would be no more than the present owner of a future right. The interest given would still remain an expectancy with the use, possession, or enjoyment delayed. * * *

To the same effect, see *Frank T. Quatman*, 54 T.C. 339, 342 (1970); *Chanin* v. *United States*, 393 F. 2d 972, 977 (Ct. Cl. 1968).[11]

We hold that the gifts here in dispute were future interests in property within the meaning of section 2503(b); therefore, such gifts do not qualify for the exclusion from taxable gifts provided by that section.

*Decision will be entered for the respondent.*

[11] In view of our conclusion that the beneficiaries' rights to alienate their interests do not convert them into present interests, we need not consider whether the spendthrift clause contained in part VII of the trust instrument restricted their power to alienate their interests.